STATE OF MONTANA EX REL. THE MONTANA MILK CONTROL BOARD, RELATORS, *v.* DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY OF BEAVERHEAD, AND THE HONORABLE PHILIP C. DUNCAN, THE JUDGE THEREOF, RESPONDENTS.

No. 10150.
Submitted June 30, 1960. Decided October 4, 1960.
355 P. 2d 664.

Geoffrey L. Brazier, Helena, argued orally, for relators.

Frank M. Davis and Carl M. Davis, Dillon, argued orally, for respondents.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

Relator filed this original proceeding on May 3, 1960, praying for a writ of prohibition to quash, vacate, and dissolve a restraining order issued by the respondent district court.

It appears that on March 14, 1960, relator caused to be issued a notice of a public hearing to be held for the purpose of obtaining evidence to assist the relator Milk Control Board in determining what are reasonable costs and charges of ordinarily efficient milk dealers for producing, hauling, processing or other services performed in respect to milk and what prices for milk will best protect the milk industry in an area designated as Market Area No. I, which includes the counties of Beaverhead, Madison, Gallatin, Park, Sweetgrass and a portion of Jefferson County. The notice further provided that the hearing was to be held to obtain evidence from which the Board could establish proper minimum wholesale and retail prices to be charged for

milk in its various forms. It also stated that the first public hearing would be held in Bozeman, Montana, on March 28, 1960, and that such public hearing would be continued in Dillon, Montana, on March 29, 1960.

On March 29, 1960, while relator was about to conduct its public hearing at Dillon Montana, it was restrained from proceeding further by an order of the respondent district court. Such order was issued ex parte based upon the allegations of a complaint filed in an action wherein Bonnie Arbour and Juanita McLaren were plaintiffs and the relator here, its executive secretary, and the members of the Milk Control Board were named defendants. The complaint alleged that the plaintiffs were the mothers of several minor children; that they and their children comprised part of the milk-consuming public of Beaverhead County and require large quantities of milk; that the defendants were the Milk Control Board and its officers. The complaint then alleged that the notice heretofore referred to had been given by the defendants of the public hearing and pursuant thereto they were about to conduct such hearing. It was further alleged that the district court of the second judicial district of the State of Montana, in and for the County of Silver Bow, had entered an order declaring that the retail and wholesale price-fixing powers of the defendants were unconstitutional and that such order was still in full force and effect. Plaintiffs then further alleged that under the applicable statutes, the defendants were required to furnish to plaintiffs specific facts within their own knowledge which they would consider on the question of minimum prices of milk; that defendants failed within ten days prior to the 29th day of March 1960, or at any time to furnish such information, and that by reason thereof the plaintiffs were unable to present evidence in opposition to any matters peculiarly within the knowledge of the defendants, and accordingly, if the hearing were conducted, plaintiffs would be irreparably damaged and injunction is the only remedy available to them. They further alleged that none of the local members of the

advisory board appointed by the defendants reside or were acquainted with the conditions in Beaverhead County and that in consequence thereof the defendants were not properly advised as to the necessity for a hearing in Beaverhead County; that the proposed hearing is unlawful and contrary to the Constitution and in violation of the court decree before referred to, in that it was contrary to and in violation of the statutes of the state relating to the supervision of the milk industry, and that the proposed hearing is arbitrary and without any authority whatever; that unless defendants are restrained from conducting the hearing, plaintiffs will suffer irreparable damages for which they have no adequate remedy at law.

The district court issued an order of injunction on March 28, 1960, enjoining defendants during the pendency of the action from conducting any hearing for the purpose of establishment of minimum prices for milk in Beaverhead County. Upon the same date the district court issued an order to show cause returnable on April 18, 1960, ordering the defendants to show cause why they should not be enjoined from conducting a public hearing for the purpose of establishing minimum milk prices in Beaverhead County.

Defendants in said cause then filed a motion to quash, vacate and dissolve the injunction wherein they alleged:

(1)   That the complaint did not state a cause of action;

(2)   That the action was premature in that plaintiffs had other plain, speedy, and adequate remedies at law available, and that they failed to exhaust said remedies;

(3)   That said action was hindering and delaying the execution of a public statute by officers of the law for the public benefit, contrary to the express provisions of the applicable statutes;

(4)   That on the face of the complaint it appears that plaintiffs had no legal standing to enjoin the regular functions of the defendants, and that they not only had failed to state facts constituting any injury to themselves but they had failed to state

facts constituting any extraordinary injury to themselves resulting from defendants' actions; and

(5) That the injunction granted had the effect of staying a judicial proceeding pending at the commencement thereof before the district court of the eighteenth judicial district of the State of Montana, in and for the County of Gallatin, contrary to the express provisions of the statute.

Thereafter, the district court denied defendants' motion, and this original proceeding was then filed by the relator. Following an ex parte hearing this court issued an alternative writ of prohibition. Upon the return day respondents filed herein a motion to quash based upon three grounds. The first being that the petition for the writ of prohibition did not state facts sufficient to constitute the right to a writ; second, that the petition did not state facts disclosing that respondent district judge exceeded or threatened to exceed his jurisdiction; and third, that the petition is ambiguous, uncertain and unintelligible and fails to state any facts upon which a writ of prohibition could or should be issued.

At the same time, without waiver, and as required by the rules of this court, respondents filed their answer.

Turning first to the arguments made by respondents upon their motion to quash. The first contention made is that the petition does not disclose that ''unanimous consent of all of members of the board'' had been had prior to institution of this proceeding as required by section 27-424, R.C.M. 1947. The petition herein states that the executive secretary of the Board, ''as such administrative officer, has the authority of said Board to institute this action on their behalf under the provisions of R.C.M. 1947, § 27-424.'' It would appear from such allegation that the contention of the respondents lacks merit.

Respondents next attack the right of the Board to conduct the hearing which was restrained. As they put it in their brief: ''The statutes do not direct the Board to conduct a preliminary

investigation of costs of handling milk, or give notice of the results thereof to the consuming public, or to then proceed to conduct a public hearing, based on such a notice, concerning milk prices and marketing conditions having for its object the issuance of orders fixing prices.''

It is difficult to reconcile this statement with the plain wording of the statute. We quote a portion of section 27-407, R.C.M. 1947, as amended by section 5, chapter 192, 1959 Session Laws, as follows:

''Prior to the fixing of prices in any market the board shall conduct a public hearing and admit evidence under oath relative to the matters of its inquiry at which hearing the consuming public shall be entitled to offer evidence and be heard the same as persons engaged in the milk industry. The board shall by means of such hearing or from facts within its own knowledge, investigate and determine what are reasonable costs and charges for producing, hauling, handling, processing, and/or other services performed in respect to milk and what prices for milk in the several localities and markets of the state, and under varying conditions, will best protect the milk industry in the state and insure a sufficient quantity of pure and wholesome milk to adults and minors in the state, and be most in the public interest.

''The board shall take into consideration the balance between production and consumption of milk, the costs of production and distribution, and prices in adjacent and neighboring areas and states, so that minimum prices which are fair and equitable to producers, distributors and consumers may result.

''The board shall, at least ten (10) days prior to the date set for any public hearing on minimum prices, cause notice to be given to the consuming public and the milk industry of the specific factors which shall be taken into consideration in determining costs of production and distribution and of the actual dollars and cents costs of production and distribution which preliminary studies and investigations of auditors or accountants in its employment indicate will or should be shown at the

hearing, so that all interested parties will have opportunity to be heard and to question or rebut such considerations as a matter of record.

"If the board at any time proposes to base all or any part of any official order fixing minimum prices upon facts within its own knowledge, as distinguished from evidence which may be presented to it at a public hearing by the consuming public or the milk industry, the board shall, at least ten (10) days prior to the date set for any public hearing on minimum prices, cause notice to be given to the consuming public and the milk industry of the specific facts within its own knowledge which it will consider, so that all interested parties will have opportunity to be heard and to question or rebut such facts as a matter of record."

The Board is very clearly charged that prior to fixing any prices in any market it "shall conduct a public hearing" and receive evidence. It further provides that the Board shall "by means of such hearing or from facts within its own knowledge, investigate and determine what are reasonable costs and charges for producing, hauling, handling, processing, and/or other services performed in respect to milk."

Respondents' attack is directed to the allegations of the petition wherein, after setting forth that the legislature by certain statutes had vested the Board with general supervisory powers over the fluid milk industry of the state and specifically charged the Milk Control Board that, prior to determining prices in a particular market area, "it must conduct a preliminary investigation of costs of handling milk, give notice of the results thereof to the industry and the consuming public and thereafter conduct a public hearing at which all persons have an opportunity to be heard on the subject matters in controversy".

Respondents contend that the Board had to first investigate not only the *costs of handling milk* but many additional elements, directed and itemized by the statute, such as producing,

hauling, processing or other services performed in respect to milk. While the legislature used these several words in describing the duty resting upon the Board essentially are they not all a part of handling milk? Does not "handling milk" include the production, hauling, and processing Would not other services performed in respect to milk be included in the general designation "handling milk", in the sense that it was used by the petitioner. Petitioner did not quote the statute but merely used a descriptive general term to cover the entire situation.

The notice of the hearing, which the plaintiffs alleged in their complaint in the district court action was issued by the relator, set forth the purposes of the hearing as:

"(a) To obtain evidence to assist the said Board in determining what are reasonable costs and charges of ordinarily efficient milk dealers for producing, hauling, processing and/or other services performed in respect to milk and what prices for milk will best protect the milk industry in the market area and insure a sufficient quantity of pure and wholesome milk to the adults and minors residing in the market area and be most in the public interest. For this purpose, the Board will consider, but not be limited to, the following factors: [Here followed a numbered list of 19 specific factors the Board would consider.]"

"(b) To obtain evidence from which the Board can establish proper minimum wholesale prices to be charged for milk in its various forms, classes, grades, and uses when sold by distributors or producer-distributors to retail stores, restaurants boarding houses, sororities, confectionaries, public and private institutions and instrumentalities of all types and description in the Market Area Number I. For this purpose the Board will consider but not be limited to the following items: [Here followed a numbered list of 10 specific items the Board would consider.]"

"(c) To obtain evidence from which the Board can establish proper minimum retail prices to be charged for milk in its various forms classes, grades, and uses when sold by distributors, producer-distributors, and retail stores to consumers. For this

purpose the Board will consider but not be limited to the above and the following items: [Here followed a list of 6 specific items the Board would consider.]"

The notice further stated that:

"From facts within its own knowledge obtained from past experience with the milk industry in Market Area No. I, from national and local cost surveys, from conditions in neighboring market areas and from recent audits of milk dealers and milk producers in Market Area Number I, the Board has determined that the following costs are representative of producers having a production per cow of 11,100 pounds of milk or more annually." Here follows a set of figures setting forth the cost of producing milk per 100 pounds. Next the notice stated that "Prices reported by the United States Department of Agriculture, Agricultural Marketing Service, which were published February 29, 1960, show that the average price received by dairy farmers in the United States as of January 15, 1960, for milk fat in cream was 59.7 cents per pound." Then followed a recapitulation of prices for milk eligible for fluid markets, including surplus, for the Mountain, East, North Central and Pacific states, which was shown as to each state.

The notice then contained (1) the producer price for grade A milk as reported at Idaho Falls, Idaho; (2) Federal market order prices for Class I milk announced for the month of March 1960, for the Inland Empire, Puget Sound, Minneapolis-St. Paul; (2) consumer prices reported for milk in the same areas; (3) milk prices set by the Board for the Billings and Great Falls areas; and (4) the average prices in the area around Bozeman. It also set forth the number and type of milk plants in the area under consideration and gave verified costs of two milk plants in that area, broken down to show the cost of container and ingredient, general and administrative, production and platform costs, together with wholesale delivery cost, wholesale unit cost, retail delivery cost, and retail unit cost as to the listed milk products.

The notice then concluded with these words:

"Please be prepared to present evidence affirming, qualifying, modifying or denying any part of or all of the above-stated facts.

"You are hereby advised that no prices, terms or conditions, will be established where the same are not supported by substantial evidence presented by members of the fluid milk industry, the consuming public or interested parties in Market Area Number I.

"You are hereby notified that pursuant to the provisions of section 5, of chapter 192, of Session Laws of the State of Montana, 1959, John F. Evans and Jack Ostema, producers, and Arnold Kessler and Arne Petaja distributors, have been appointed by the Montana Milk Control Board as Local Advisory Board to advise and assist the Milk Control Board in matters pertaining to the production and marketing of milk in said Market Area Number I.

"Attached are proposals filed by the Bozeman Milk Producers Association to be included in an anticipated marketing and stabilization plan to be ordered by the Board. Please be prepared to present evidence concerning the necessity for same or any part thereof or suggested modifications of same on any part thereof."

Attached to the notice were three mimeographed pages covering the proposals filed by the Bozeman Milk Producers Association.

Concerning the information which the board must, at least ten days prior to the date set for a public hearing, furnish to the public is spelled out by the statute as follows:

(1) Specific factors which shall be taken into consideration in determining costs of production and distribution; and

(2) Actual dollars and cents costs of production and distribution as determined from their preliminary studies and investigations.

If the Board proposes to base any part of an official

order fixing minimum prices upon facts within its own knowledge it must give notice of the specific facts which it will consider.

In our opinion, the Board very clearly followed the directive of the statute, and we fail to find any merit to this contention of respondents.

Respondents also assert that the statutory method of review of relators' actions is inadequate in that it is their contention that it provides only for review by certiorari. They assert that such review is very limited, citing State ex rel. Lay v. District Court, 122 Mont. 61, 198 P.2d 761, and the statutes, sections 93-9001 through 93-9011, R.C.M. 1947, inclusive.

In considering these contentions it is true that section 12 of chapter 192, Laws of 1959, section 27-428, R.C.M. 1947, denominates the judicial review as one of certiorari, but this section contains these two important paragraphs:

"If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.

"When any such writ is granted, the cause shall have precedence upon the calendar of the court, and judgment and decree shall be entered therein as expeditiously as possible. The court shall affirm, modify or reverse the decision or order of the board in accordance with law."

It will be seen that these paragraphs provide for additional evidence if the court desires it in order that a full determination may be made, and the court may affirm, modify or reverse any decision or order of the Board. It would appear that ample remedy has been provided by the statute, though perhaps the use of the word certiorari to describe it was inept.

The motion to quash is denied.

190

Since it appears that relator was in the process of conducting a hearing after having given notice thereof as provided by the applicable statutes, what was said in State ex rel. Reid v. District Court, 134 Mont. 128, 328 P.2d 634, 636, should be repeated here:

"Here the Board had jurisdiction and was acting within its jurisdiction when the respondent court interceded by way of a writ of prohibition. This may not be done. State ex rel. Lloyd v. District Court, 105 Mont. 281, 72 P.2d 1014; State ex rel. Sands v. District Court, 95 Mont. 427, 26 P.2d 970; State ex rel. Reid v. District Court, 126 Mont. 586, 256 P.2d 546."

See also State ex rel. Yuhas v. Board of Medical Examiners, 135 Mont. 381, 339 P.2d 981.

Respondents' answer herein alleges that it appears from the verified complaint in the district court action that relator did not give notice as alleged in its petition herein. What we have heretofore said disposes of such contention.

It appears that relator has no other plain, speedy or adequate remedy.

For the foregoing reasons the alternative writ issued herein is made permanent.

MR. JUSTICES BOTTOMLY, ANGSTMAN and CASTLES concur.

MR. JUSTICE ADAIR dissents.